IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **ALEXANDER BRICKHOUSE, et al.** | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| vs. | ) Case No. 12-593-DRH-PMF |
| | ) |
| **JOHN REDSTONE, et al.,** | ) |
| | ) |
| **Defendants.** | ) |

### ORDER

**HERNDON, Chief Judge:**

This case involves an action for money damages brought pursuant to 42 U.S.C. § 1983 by a mother and her son against a municipality, two of its police officers, individually and in their official capacities, and other unnamed police officers, in their individual and official capacities, after one of the named officers allegedly removed the son from the mother's vehicle, took him into the police station, and beat him after overhearing the mother filing a complaint against the two named officers.[1] The two named officers, defendants Richard Dawes and John Redstone (collectively "defendants" for purposes of this order), filed motions to dismiss (Docs. 15 & 16), seeking dismissal of all claims brought against them by plaintiffs Alexander Brickhouse, the son, and Avianne Lee Khalil, Brickhouse's mother. Several of those

---

[1] The Court notes that plaintiffs have yet to name the unnamed officers, but that discovery is not set to conclude until April 1, 2013. Plaintiffs have until April 1, 2013, to name the unnamed officers or the Court will dismiss those parties at that time. See FED. R. CIV. P. 21 ("On motion or on its own, the court may at any time, on just terms, add or drop a party.").

Page 1 of 19

claims, specifically counts IV through IX, have already been dismissed due to plaintiffs' failure to timely respond to defendants' subsequent motion to dismiss counts IV through IX (Doc. 32). Thus, only counts I and II remain against defendants as count III was not directed against them. For the reasons that follow, defendants' motions to dismiss (Docs. 15 & 16) are denied.

## I. Background

On May 8, 2012, plaintiffs filed a nine-count complaint against defendants, the City of Granite City, and John Doe officers I-XXX, alleging the facts below. The Court notes that at this point it takes the facts alleged as true but not legal conclusions or conclusory allegations that merely recite a claim's elements. See *Munson v. Gaetz*, 673 F.3d 630, 632-33 (7th Cir. 2012) (citing *McCauley v. City of Chi.*, 671 F.3d 611 (7th Cir. 2011)).

On approximately May 9, 2010, Brickhouse was involved in a motor vehicle collision which resulted in him being transported from the scene of the incident to Granite City Hospital via an ambulance. Brickhouse was not cited for any violations of the law at the scene of the accident.

Upon admission to the hospital and during Brickhouse's medical examination, he was observed as sustaining no physical contusions or abrasions or any significant or notable injuries as a result of the collision. Brickhouse was discharged from the hospital in the early afternoon of May 9, 2010, with a minor mark from the deployment of the airbag.

Soon after Brickhouse was admitted to the hospital, his mother arrived to

check on her son.  Upon arrival to her son's room, she noticed two Granite City police officers, officers Redstone and Dawes, in the room, questioning her son.  The two officers questioned Brickhouse regarding the incident and they issued him a citation for the following violations: 1) failing to yield on a green light; 2) failing to avoid the accident; 3) failure to wear a seat belt; and 4) failure to have insurance.  The officers continued to question Brickhouse, despite the fact that he was in a hospital bed, allegedly scared and confused.

Brickhouse's mother began to feel uncomfortable with the officers' tactics and interjected, telling the officers to stop questioning her son and directing her son to stop answering their questions until an attorney could assist him.  The two officers told Brickhouse's mother that it was none of her business and that Brickhouse was an eighteen year old adult.  Brickhouse's mother told them that he was still in high school and as her son she had a right to advise him.  The officers then threatened to arrest Brickhouse's mother.  Brickhouse's mother ignored their threats and told them to leave.  As the officers began to leave, officer Redstone said "stupid Muslim bitch."  Brickhouse's mother responded that she would complain about his language. Redstone uttered more expletives and took on an aggressive posture. Brickhouse's mother backed up and went to her son's bed.

Upon Brickhouse's release from the hospital, Brickhouse's mother decided to immediately go to the police station to file a complaint against the officers for their conduct, offensive and abusive statements, and to protest the alleged unjustified citations issued to her son.  When Brickhouse's mother went inside to file the

complaint, Brickhouse remained in the car. Brickhouse's mother went to the front desk which was occupied by a desk sergeant, John Doe #1. Brickhouse's mother told the desk sergeant that she wanted to file a complaint about officers Redstone and Dawes. Brickhouse's mother was overheard by Redstone who happened to be present in the station in a room behind the front desk. Redstone stepped out of the room and saw Brickhouse's mother. He then walked outside to where Brickhouse's mother's vehicle was parked.

Once outside, Redstone banged on the window of the car to get Brickhouse's attention who was sitting in the vehicle listening to music on his Ipod. When Brickhouse opened the door, Redstone pulled the boy from the vehicle and threw him against the car. Redstone allegedly rough handled him out of the car and threw him against the side saying "your bitch mother isn't going to cause me to lose my job" or other similar words. Redstone proceeded to slam the boy against the car, pulled his arms back, and handcuffed him, tightening the cuffs excessively as he did so. Redstone then forcefully dragged and pushed Brickhouse into the station in front of his mother. He took him to a metal door that separates the holding cells from the outer reception area and when they arrived at the door, Redstone slammed Brickhouse's head into the metal door.

Redstone continued to the holding cell where he again slammed Brickhouse's head against the metal cell bars. Brickhouse fell to the floor into a fetal like position to protect his body and limit further abuse. Redstone then kicked Brickhouse in the ribs and other parts of his body, as Brickhouse screamed and pleaded for him to

stop. Redstone then lifted Brickhouse using the handcuffs, causing Brickhouse's arms to pull back in an unnatural manner and resulting in severe pain in his shoulders. The pain caused him to scream in agony. Redstone then searched Brickhouse and once done, he uncuffed him and locked him in the cell. Brickhouse suffered lacerations, contusions, and bruises to his hands and body.

Brickhouse's mother watched in terror and allegedly experienced severe emotional distress as Redstone dragged her teenage son into the station and then slammed his head against the metal door. She could not offer any assistance or intercede to defend him. As she heard his screams, she pleaded with the desk sergeant, John Doe #1 and either Dawes or John Doe #2, to please stop Redstone from assaulting her son. Either John Doe #1, John Doe #2, or Dawes looked at the other and stated "I don't hear anything, do you?"

After placing Brickhouse in the jail cell, Redstone emerged from the back. Crying, Brickhouse's mother demanded to know what he did to her son and why he arrested him. Redstone replied it was because you "had to be a stupid bitch" or "Muslim bitch" or similar language and words that were equally offensive and insulting.

Brickhouse's mother left the police station and immediately called her former husband, Brickhouse's father, Earl Brickhouse. She explained to him what had happened and Brickhouse's father went to the police station to secure the release of his son. At the police station, Brickhouse's father was told that he would have to post a bond for his son, which he did.

Upon release from the police station, Brickhouse's father and his current wife immediately went to Christian Hospital Northeast to seek medical attention and treatment for the injuries suffered by Brickhouse. Brickhouse was admitted to the hospital and examined by a number of medical professionals. Brickhouse complained of pain in his chest, face, and ribs. Brickhouse was observed as having lacerations and abrasions to the left and right wrists where he was handcuffed by Redstone, as well as various other lacerations, scratches, and contusions to his body. Brickhouse suffered contusions to the chest wall, contusions to the face, and abrasions to the right forearm.

On May 11, 2010, Brickhouse's father went to the police station to pursue the matter further. He received a police report stating the Brickhouse was arrested at the scene of the accident.

Based upon these alleged facts, on May 8, 2012, plaintiffs brought a nine count complaint, alleging the following counts: 1) unconstitutional use of excessive force pursuant to § 1983 against Redstone and the John Does; 2) lawful and unreasonable seizure in violation of § 1983 against Redstone, Dawes, and John Doe #1; 3) failure to intervene in violation of § 1983 against the City of Granite City and defendant police officers; 4) Illinois common law civil conspiracy and concert of action against the City of Granite City, the Granite City police department, Redstone, and John Does; 5) assault against Redstone, Dawes, and John Doe #1; 6) battery against Redsone, Dawes, and John Doe #1; 7) intentional/reckless infliction of emotional distress against Redstone, Dawes, and John Doe #1; 8) negligent infliction of

emotional distress against Redstone, Dawes, and John Doe #1; and 9) false imprisonment against Redstone, Dawes, and John Doe #1. On June 8, 2012, the City of Granite City filed its answer to the complaint. (Doc. 6). On July 5, 2012, defendants Dawes and Redstone filed separate motions to dismiss (Docs. 15 & 16) but filed a joint memorandum in support of those motions (Doc. 17). On August 8, 2012, plaintiffs filed a response to the motions to dismiss (Doc. 20).

On August 9, 2012, the City of Granite City filed a motion to dismiss count IV (Doc. 21) along with a memorandum in support thereof (Doc. 22). On August 28, 2012, defendants Dawes and Redstone filed a motion to strike plaintiffs' response to their motions to dismiss (Doc. 26), contending that the response was untimely because it was not filed within thirty days as required by the local rules and because there is not adequate citations to relevant authority or to the record. On August 29, 2012, defendants Dawes and Redstone filed a subsequent motion to dismiss (Doc. 27), seeking dismissal of counts IV through IX. On September 17, 2012, plaintiffs filed a consent motion for an extension of time to respond to defendants Dawes and Redstone's motion to dismiss counts IV through IX (Doc. 29), asking for an extension until October 1, 2012, when plaintiffs' response to the City of Granite City's motion to dismiss count IX was due. The Court granted that motion, but plaintiffs failed to file responses to either the City of Granite City's motion to dismiss count IV or defendants Dawes and Redstone's motion to dismiss counts IV through IX. Accordingly, on October 2, 2012, the Court granted defendant the City of Granite City's motion to dismiss count IV and defendants Redstone and Dawes' motion to

dismiss counts IV through IX on the basis that plaintiffs' failure to timely respond was an admission on the merits of the motions as provided in Local Rule 7.1(c) of the United States District Court for the Southern District of Illinois. (Doc. 32).

As to defendants' motion to strike plaintiffs' response, that motion is denied. Defendants filed their motions to dismiss on July 5, 2012. When defendants filed their motions electronically, the case management ("CM") electronic case filing ("ECF") system ("CM/ECF") generated a response date of August 9, 2012. Plaintiffs filed their response (Doc. 20) on August 8, 2012, a day before the response was due. Thus, as explained below, plaintiff's response was timely and defendants' motion to strike is denied.

Under the local rules, plaintiffs had thirty days, plus an extra three days because it was filed electronically, to file its response. See SDIL-LR 7.1(c); SDIL-LR 5.1(c). Federal Rule of Civil Procedure Rule 6 instructs the Court on how to compute time with regard to motions. See FED. R. CIV. P. 6. That rule states that when the time period is stated in days, you exclude the day of the event that triggers the period, count every day, including intermediate Saturdays, Sundays, and legal holidays, and include the last day of the period, but if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday. *Id.* at 6(a)(1). "When a party may or must act within a specified time after service and service is made under Rule 5(b)(2)(C), (D), (E), or (F), 3 days are added after the period would otherwise expire under Rule 6(a)." *Id.* at (d).

Here, the motion to dismiss was filed on July 5, 2012. Thirty days from July 5, 2012, excluding July 5, 2012, and counting every day including the last day of the period, results in a date of Saturday, August 4, 2012. Thus, because the last day was a Saturday, the period continued to run until Monday, August 6, 2012. Because service was made under Rule 5(b)(2)(E), by electronic means, three days were added to Monday, August 6, 2012, resulting in a response deadline of Thursday, August 9, 2012, as CM/ECF indicated. Thus, plaintiffs' response was timely.

Lastly, Dawes and Redstone ask the Court to strike the response because there is not adequate citations to relevant authority or to the record. The Court disagrees. Plaintiffs' response does cite to relevant authority and refers the Court to the allegations in the complaint, which is what the Court considers on a motion to dismiss. Accordingly, the motion to strike is denied, and the Court now turns to the motion to dismiss.

## II. Motion to Dismiss

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of the complaint for failure to state a claim upon which relief may be granted. *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997). To survive a motion to dismiss, a complaint must establish a plausible right to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The allegations of the complaint must be sufficient "to raise a right to relief above the speculative level." *Id*.

In making this assessment, the district court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in the plaintiff's favor. See *Rujawitz v. Martin*, 561 F.3d 685, 688 (7th Cir. 2009); *St. John's United Church of Christ v. City of Chi.*, 502 F.3d 616, 625 (7th Cir. 2007), *cert. denied,* 553 U.S. 1032 (2008). Even though *Twombly* (and *Ashcroft v. Iqbal,* 556 U.S. 662 (2009)) retooled federal pleading standards, notice pleading remains all that is required in a complaint: "A plaintiff still must provide only 'enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests and, through his allegations, show that it is plausible, rather than merely speculative, that he is entitled to relief.'" *Tamayo v. Blagojevich,* 526 F.3d 1074, 1083 (7th Cir. 2008).

### III. Analysis

"To state a claim for relief in an action brought under § 1983, respondents must establish that they were deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." *Am. Mfrs. Mutual Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999). "As the Supreme Court has stated, 'it is firmly established that a defendant in a § 1983 suit acts under color of state law when he abuses the position given to him by the State.'" *Kernats v. O'Sullivan*, 35 F.3d 1171, 1175 (7th Cir. 1994) (quoting *West v. Atkins*, 487 U.S. 42, 49-50 (1988)). "Of course, every official abuse of power, even if unreasonable, unjustified, or outrageous, does not rise to level of a federal constitutional deprivation." *Kernats*, 35 F.3d at 1175. "Some such conduct may simply violate state tort law or indeed may be perfectly legal, though unseemly and

reprehensible." *Id.*

In analyzing a § 1983 claim, the Court should identify the specific constitutional right allegedly infringed. *Id.* If a plaintiff has sufficiently alleged a violation of his or her constitutional rights, an analysis of the officials' possible qualified immunity is appropriate. *Lanigan v. Vill. of E. Hazel Crest*, 110 F.3d 467, 471 (7th Cir. 1997).

A qualified immunity defense may be raised in a motion to dismiss. See *McDonald v. Haskins*, 966 F.2d 292, 292 (7th Cir. 1992). "Once a defendant has pleaded a defense of qualified immunity, it is appropriate for courts to approach to approach the issue using a two-step analysis: (1) Does the alleged conduct set out a constitutional violation? and (2) Were the constitutional standards clearly established at the time in question?" *Kernats*, 35 F.3d at 1176. The Court may address either prong in whichever order is best suited to the circumstances of the particular case at hand. *Brooks v. City of Aurora*, 653 F.3d 478, 483 (7th Cir. 2011).

"The plaintiff bears the burden of establishing the existence of a clearly established constitutional right." *Kernats*, 35 F.3d at 1176 (citing *Raskovich v. Wade*, 850 F.2d 1180, 1209 (7th Cir. 1988). "A clearly established right is one where 'the contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Jacobs v. City of Chi.*, 215 F.3d 758, 766 (7th Cir. 2000) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). To determine whether a right is clearly established, the Court looks to controlling precedent, but "[i]n some rare cases, where the constitutional violation

is patently obvious, the plaintiffs may not be required to present the court with any analogous cases, as widespread compliance with a clearly apparent law may have prevented the issue from previously being litigated." *Jacobs*, 215 F.3d at 767. Further, there may be some cases where "'the conduct is so egregious that no reasonable person could have believed that it would not violate clearly established rights.'" *Gonzalez v. City of Elgin*, 578 F.3d 526, 540 (2009) (quoting *Smith v. City of Chi.*, 242 F.3d 737, 742 (7th Cir. 2001)).

"It is clear . . . that police officers do not have the right to shove, push, or otherwise assault innocent citizens without any provocation whatsoever." *Clash v. Beatty*, 77 F.3d 1045, 1048 (7th Cir. 1996). "It is only when the circumstances themselves leave room for the exercise of judgment on the part of the police officer that qualified immunity is appropriate." *Id.* "The police cannot have the specter of a § 1983 suit hanging over their heads when they are confronted with a dangerous fugitive, possible escapee, or as long as their behavior falls within objectively reasonable limits." *Id.* "On the other hand, if the facts draw into question the objective reasonableness of the police action under the alleged circumstances, they must be developed in the district court before a definitive ruling on the defense can be made." *Id.*

"Whether probable cause exists at the time of an arrest depends on whether 'the facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that he suspect has committed, is committing, or is about to

commit an offense." *Brooks*, 653 F.3d at 484. "Even when a police officer has probable cause to execute an arrest, he still may have committed an unreasonable seizure 'if judging from the totality of circumstances at the time of the arrest, the officer used greater force than was reasonably necessary to make the arrest.'" *Id.* (quoting *Gonzalez*, 578 F.3d at 539 (internal quotation marks omitted).

Whether the defendants' use of force comports with the Fourth Amendment's "reasonableness" requirement requires the Court to balance the "'nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.'" *Catlin v. City of Wheaton*, 574 F.3d 361, 366 (7th Cir. 2012) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). Particular factors to consider include "'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Catlin*, 574 F.2d at 366 (quoting *Graham*, 490 U.S. at 396). "A factual inquiry into an excessive force claim 'nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom . . . .'" *Gonzalez*, 578 F.3d at 539 (quoting *Abdullahi v. City of Madison*, 423 F.3d 763, 773 (7th Cir. 2005) (internal quotation marks omitted)).

*A. Count I: Excessive Force*

Plaintiffs' count I alleges a § 1983 claim of unconstitutional use of excessive force in violation of the Fourth and Fourteenth Amendments against defendants

Redstone, Dawes, and the John Does.[2] Specifically, plaintiffs allege that the specific acts of defendants Redstone, Dawes, and the John Does, individually and acting in concert with one another, were objectively unreasonable. Those acts are set forth as follows:

    i.    Defendants Redstone and Dawes unlawfully attempted to coerce and question [Brickhouse] into making false admissions.
    ii.    Defendant Redstone purposfully, maliciously, recklessly, unjustly, and unreasonably held [Brickhouse] captive when he pulled him from the vehicle without probable cause or a warrant that was based upon any articulable facts or reasonable suspicion.
    iii.    While holding [Brickhouse], Defendant Redstone threatened the innocent and unarmed Plaintiff in retaliation for the conduct of his mother for attempting to file a complaint.
    iv.    Defendant Redstone forcefully and unlawfully dragged [Brickhouse] into the police station in front of his mother in violation of [Brickhouse's] constitutionally protected rights.
    v.    Defendant Redstone, without a warrant or consent, physically removed the Plaintiff from his vehicle; such menacing movements towards Plaintiff caused Plaintiff [Brickhouse] to fear for his safety and well being.
    vi.    Defendant Redstone physically injured the helpless [Brickhouse] while he was handcuffed and unable to defend himself in the presence of his mother, Plaintiff Khalil.
    vii.    Redstone physically assaulted, beat and kicked [Brickhouse] with unlawful and excessive force and violence without any legal justification or excuse.
    viii.    Redstone, and Defendant John Doe #1 and Defendant Dawes illegally and against his will imprisoned Plaintiff Alexander Brickhouse without any authority or legal justification and absent a warrant or probable cause to arrest and detain him.
    ix.    Defendants collectively conspired to cover up the unlawful conduct by creating false official reports and making false

---

[2]The Court notes that while the heading for count I only alleges claims against defendant Redstone and the John Does, count I contains allegations against both defendants Redstone and Dawes and the parties have briefed this count as if it pertains to both defendants. Accordingly, the Court assumes that the heading contains an error.

statements on those reports. (Doc. 2, p. 11–12).

In Redstone and Dawes' motions to dismiss, they move to dismiss count I pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. Specifically, they contend that count I should be dismissed because they had probable cause to arrest Brickhouse and because they are entitled to qualified immunity for their actions arising out of the underlying occurrence. Further, Dawes notes that plaintiffs have failed to allege that he used any type of force of physical threat which would violate plaintiffs' constitutional rights.

Here, the Court finds that Brickhouse has sufficiently alleged a violation of his constitutional rights. Specifically, Brickhouse alleges that while he was sitting in his mother's car, Redstone pulled Brickhouse from his mother's vehicle and threw him against the car. Redstone then slammed Brickhouse against the car, handcuffed him, and drug Brickhouse into the police station, slamming his head into a metal door as he did so. Redstone moved Brickhouse to a holding cell and slammed his head against the metal cell bars. Redstone then kicked Brickhouse in the ribs and other parts of the body as the boy laid in the fetal position on the ground. Redstone then picked Brickhouse up with the handcuffs, searched him, and locked him in the cell. Brickhouse alleges all of this occurred while he was no threat and posed no resistance to defendants. Clearly, if these allegations are true, Brickhouse has alleged a violation of his constitutional rights. Accordingly, the Court must determine whether defendants are entitled to qualified immunity.

Here, the Court finds that alleged conduct set out a constitutional violation and

the constitutional standards were clearly established at the time in question. Certainly, if what plaintiff alleges is true, whether defendants had probable cause to arrest Brickhouse or not (which is currently in dispute), a reasonable official would understand that it could not beat a non-dangerous, unresistant individual. Assessing the reasonableness of defendants' force under the circumstances alleged, the Court finds that the existence of qualified immunity will depend on the facts of the case. Moreover, considering that, according to the complaint, Brickhouse was only charged with minor traffic violations and a failure to have insurance, that Brickhouse did pose an immediate threat to the safety of the officers or others, and that he was actively resisting arrest or attempting to evade arrest by flight, it does not appear that defendants' actions were reasonable, but those facts have not been fully developed yet. See *Catlin*, 574 F.2d at 366 (quoting *Graham*, 490 U.S. at 396). Accordingly, the motion to dismiss is denied so that the facts can be developed.

As to Dawes argument that plaintiffs have failed to allege that he used any type of force of physical threat which would violate plaintiffs' constitutional rights, the Court finds that Brickhouse has alleged enough for his claim against Dawes to survive at this point. Indeed, "while it is true that a plaintiff must establish a defendant's personal responsibility for any claimed deprivation of a constitutional right, a defendant's direct participation in the deprivation is not required." *Miller v. Smith*, 220 F.3d 491, 495 (7th Cir. 2000) (citing, .e.g., *Smith v. Rowe*, 761 F.2d 360, 369 (7th Cir. 1985)). "'An official satisfies the personal responsibility requirement of § 1983 if she acts or fails to act with a deliberate or reckless disregard of the

plaintiff's constitutional rights.'" *Miller*, 220 F.3d at 495 (quoting *Crowder v. Lash*, 687 F.2d 996, 1005 (7th Cir. 1982)). "Under this rule, police officers who have a realistic opportunity to step forward and prevent a fellow officer from violating a plaintiff's rights though the use of excessive force but fail to do so have been held liable." *Miller*, 220 F.3d at 495 (citing, e.g., *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994)); see also *Lewis v. Downey*, 581 F.3d 467, 472 (7th Cir. 2009). Here, Brickhouse alleged that his mother pleaded with Dawes to stop Redstone from assaulting her son, but Dawes did nothing and ignored her request. Based upon these allegations, defendants' motion to dismiss count I is denied.

### B. Count II: *Unlawful and Unreasonable Seizure*

Plaintiffs' count II alleges a § 1983 claim of unlawful and unreasonable seizure in violation of the Fourth Amendment against defendants Redstone, Dawes, and John Doe #1. Specifically, plaintiffs contend that the following specific acts of defendants Redstone, Dawes, and the John Does, individually and acting in concert with one another, were objectively unreasonable:

i.   Defendant Redstone unlawfully and with a criminal intent approached [Brickhouse] while in the vehicle outside of the police station and under color of authority induced [Brickhouse] to open the car door.
ii.  Redstone purposefully, maliciously, recklessly, unjustly, and unreasonably held [Brickhouse] captive by pulling and dragging him out of the vehicle.
iii. Defendants Redstone, Dawes and the John Does purposefully, maliciously, recklessly, unjustly, and unreasonably restricted Alexander's movement and freedom.
iv.  Defendant Redstone unlawfully seized Alexander without a warrant, consent or probable cause from the vehicle in which he was sitting.

> v.  Defendant Redstone, Dawes and other John Does officers imprisoned [Brickhouse] under false pretenses and without a warrant, consent or probable cause. (Doc. 2, p. 13-14).

Defendants contend that no claim can exist as they possessed probable cause to arrest plaintiff Brickhouse and further they are entitled to qualified immunity.

For the same reasons as explained above, this claim survives defendants' motion to dismiss. Brickhouse has stated a Fourth Amendment cause of action if defendants' conduct constituted a "seizure" and the seizure was unreasonable. See *Kernats*, 35 F.3d at 1177. It is undisputed that a seizure occurred here and whether that seizure was unreasonable has yet to be fully developed. Therefore, defendants' motion to dismiss count II is denied.

### C. Standing

Lastly, the Court *sua sponte* raises the issue of Brickhouse's mother's standing to proceed in this case. "Under Article III's case and controversy requirement, only parties with a real interest or stake in the litigation have standing to sue in federal court." *Gora v. Ginoza*, 971 F.2d 1325, 1328 (7th Cir. 1992). These constitutional standing requirements bear on the court's power to entertain a party's claim. *Id.*

Here, Brickhouse's mother's claims of injury appear to be based solely upon her status as a bystander to the incidents involving Brickhouse and defendants. While Brickhouse's mother does conclusorily allege that she suffered emotional distress as a result of witnessing Redstone beat her son, Brickhouse's mother has failed to allege what Constitutional rights of her's were violated. Accordingly, it appears Brickhouse's mother lacks standing to pursue these § 1983 claims.

Plaintiffs are given fourteen days to brief this issue and defendants shall have fourteen days thereafter to respond.

### IV. Conclusion

For the reasons stated above, the Court denies defendants' motions to dismiss (Docs. 15 & 16). Plaintiffs are given fourteen days to brief the issue of Brickhouse's mother's standing and defendants shall have fourteen days thereafter to respond. The briefs shall contain citations to relevant legal authority. A failure to brief shall be taken as an admission on the merits that Brickhouse's mother lacks standing to pursue these § 1983 claims.

**IT IS SO ORDERED.**

Signed this 29th day of November, 2012.

Digitally signed by
David R. Herndon
Date: 2012.11.29
11:50:09 -06'00'

**Chief Judge**
**United States District Court**