IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

ALEXANDER BRICKHOUSE,

    Plaintiff,

vs.

JOHN REDSTONE,

    Defendant.

Case No. 12-cv-593-SMY-PMF

**MEMORANDUM AND ORDER**

Before the Court is Plaintiff's Motion for New Trial (Doc. 182), to which Defendant has responded (Doc. 185). Plaintiff filed a Supplemental Reply (Doc. 192) and Defendant filed a Supplemental Response (Doc. 193). For the following reasons, Plaintiff's Motion for New Trial is **DENIED**.

Plaintiff filed a §1983 suit against Defendant claiming that Defendant used excessive force against him during an arrest. Following a five-day jury trial, the jury returned a verdict in favor of Defendant and against Plaintiff (Doc. 171). In his Motion for New Trial, Plaintiff argues that the verdict was against the manifest weight of the evidence because at trial, Plaintiff established that Defendant used unreasonable force against him and was harmed as a result.

In ruling on a motion for new trial, Federal Rule of Civil Procedure 59 requires "a district court to determine 'whether the verdict is against the manifest weight of the evidence…or for other reasons, the trial was not fair to the party moving." *Kapelanski v. Johnson*, 390 F.3d 525, 530 (7th Cir. 2004) (quoting *EEOC v. Century Broadcasting Corp.*, 957 F.2d 1146, 1460 (7th Cir. 1992) (internal citation omitted). Traditionally, new trials have not been permitted as a means for a dissatisfied litigant to take a second bite of the apple. *Sokol Crystal Products, Inc. v. DSC Communications Corp.*, 15 F.3d 1427, 1432 (7th Cir. 1994). A verdict determined to be

against the manifest weight of the evidence should only warrant a new trial "when the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks our conscience." *Latino v. Kaizer*, 58 F.3d 310, 315 (7th Cir. 1995). Further, because a district court's decision to grant or deny a new trial is accorded great deference, a reviewing court should reverse the decision only subject to a finding of "exceptional circumstances showing a clear abuse of discretion." *General Foam Fabricators, Inc. v. Tenneco Chems., Inc.*, 695 F.2d 281, 288.

The district judge who "heard the same testimony as the jury" and "observed the witnesses' demeanor just as the jury did" can assess the evidence, including the witnesses' credibility. *Thomas v. Statler*, 20 F.3d 298, 304 (7th Cir. 1994). Thus, in ruling on a motion for new trial, the district court may consider the credibility of the witnesses, the weight of the evidence, and anything else justice requires. *Mejia v. Cook County, Ill.*, 650 F.3d 631, 633 (7th Cir. 2011).

To prevail on an excessive use of force claim pursuant to §1983, Plaintiff was required to prove by a preponderance of the evidence that (1) Defendant used unreasonable force against Plaintiff, (2) Plaintiff was harmed as a result of Defendant's use of force and (3) Defendant acted under color of law. See *Graham v. Connor*, 490 U.S. 386, 394 (1989). It was within the province of the jury to determine the reasonableness of Defendant's use of force and the determination is an objective one: whether the officer's actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to intent or motive. *Id.* at 397.

Here, Plaintiff first contends that the jury's verdict was against the manifest weight of the evidence because Defendant's testimony was contradictory to other testimony presented at trial (Doc. 192). For instance, Plaintiff testified that Defendant kicked, punched, shoved and dragged

2

him by his handcuffs at the police station. (Doc. 189, p. 73-86). Defendant testified, however, that Plaintiff was jerking, tugging, kicking the lockers, jumping and acting erratically as Defendant tried to walk him down the hall (Doc. 190, p. 56). In addition, Plaintiff testified that Defendant slammed him against a metal door at the police station (Doc. 189, p. 73).

Officer Carter Burford testified that Plaintiff lunged at the door on his own accord, but he did not see whether Plaintiff fell to the ground (Doc. 191, p. 11). Defendant testified that he did not see how Plaintiff ended up on the ground at the metal door because he was requesting that the door be opened remotely. Burford's testimony does not contradict that of Defendant's. In fact, it fills in a gap. While Defendant was looking away, Burford saw the actions of Plaintiff jumping and slamming himself into the metal door. The jury is entitled to weigh the evidence presented to evaluate the credibility of the witnesses. *Kapelanski v. Johnson*, 390 F.3d 525, 531. Therefore, any conflicts between the witnesses' testimony were apparently resolved by the jury in Defendant's favor. See *Kapelanski*, 390 F.3d at 530-31.

Plaintiff also contends that the medical evidence supports his claim that Defendant used excessive force against him. The jury had medical records from both before and after the incident in question available for its consideration.[1] In each set of medical records, the diagnosis was "contusions to face and chest wall." In the second set of medical records, there was also a diagnosis of an abrasion to the right forearm (Doc. 189, p. 108).

Plaintiff testified that Defendant used the cuffs to pull Plaintiff down a 35-foot hallway (Doc. 189, p. 138). Plaintiff also testified that the cuffs made his wrists (plural) bleed every time he moved (Doc. 189, p. 138). Defendant testified that Plaintiff was jerking, jumping, and pulling while in his handcuffs (Doc. 190, p. 55-56). Contrary to Plaintiff's assertion in his

---

[1] Prior to the incident at the police station, Plaintiff was in an automobile accident. He was placed in an ambulance and taken to Gateway Hospital (Doc. 189, p. 122).

3

Supplemental Reply brief that "[t]he injuries to Plaintiff's wrist…could have only resulted from the deliberate misuse of the handcuffs…" (Doc. 192, p. 4), an abrasion to the wrist supports Defendant's testimony that Plaintiff's erratic behavior could have caused the abrasion.  Indeed, Plaintiff had only one abrasion on one of his wrists, which contradicts Plaintiff's testimony that the cuffs and the force with which Defendant used the cuffs, caused both of his wrists to bleed.  The jury saw demonstrations by both Plaintiff and Defendant about how the handcuffs were used.  That the jury believed Defendant's version of the handcuff use does not render the verdict so unreasonable that it would shock the conscience; it simply means that the jury chose not to believe Plaintiff's testimony—a credibility determination the jury is allowed to make.  See *Gower v. Vercler*, 377 F.3d 661, 666 (7th Cir. 2004).

At trial, Plaintiff also claimed that Defendant kicked him in the ribs and legs (Doc. 189, p. 139-40).  Defendant testified that he did not kick Plaintiff and that he was wearing steel-toed boots on the day of the incident (Doc. 190, p. 64).  The jury was shown medical documentation from after the incident that showed no fractures or bruising to Plaintiff's ribs or legs (Doc. 189, p. 54).  Based on that evidence, the jury could reasonably conclude that Defendant did not kick Plaintiff because if he had, Plaintiff would have suffered significant injury to his ribs and legs.

The Court finds that the jury reasonably weighed the evidence and made credibility determinations based on that evidence.  There were several disputed facts and the jury credited Defendant's version of events in light of the testimony and evidence presented.   Given the totality of the circumstances, the jury concluded that any force Defendant may have used was reasonable.  The record does not reveal a miscarriage of justice and the manifest weight of the evidence supports the verdict.

**IT IS SO ORDERED.**

**Date: March 2, 2016**

/s/ Staci M. Yandle
**STACI M. YANDLE**
**DISTRICT JUDGE**
